**In re Risa L. KAY, Debtor.**

**Bankruptcy No. 93–04459–6B7.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Feb. 13, 1995.

874

Risa L. Kay, pro se.

Leigh Meininger, for Chapter 7 Trustee, James C. Orr.

Jules Cohen, Jeff Keiner and Susan Collingwood, for Frith & Stump.

Robert L. Young, for Firststate.

James Fly and Dikes Everett, for Westfield Financial.

Patrick Barry, for RTC.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Risa L. Kay, the Debtor's, Motion to Convert Case to Chapter 11. After reviewing the pleadings, evidence, receiving testimony, exhibits, and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

On September 15, 1993, the Debtor sought protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* The Court entered its Order Converting Case to Chapter 7 pursuant to 11 U.S.C. § 1112 on February 28, 1994. Thereafter, James C. Orr was appointed Chapter 7 Trustee.

The Debtor owns several parcels of Central Florida real estate, and based upon the Debtor's estimate as to the relative value of each, over 70% of the total value of these parcels consists of unimproved non-income producing land. The Debtor's real estate holdings are encumbered by mortgages in excess of $5.7 million held by three secured creditors. The Debtor has failed to pay loans secured by her real estate holdings other than her homestead and has been involved in protracted state court litigation defending foreclosure actions brought by secured lenders.

Simkins Industries, Inc. d/b/a Westfield Financial Corporation ("Westfield") originated a loan on May 19, 1989 in the principal sum of $1,260,000.00 secured by 11.131 acres of real property situated at the Southwest quadrant of the intersection of State Road 436 (Semoran Boulevard) and Michigan Avenue in Orlando, Orange County, Florida (the "Southside Michigan Property"). The underlying note and mortgage evidencing the indebtedness to Westfield matured on May 19, 1991. A judicial foreclosure sale of the property was stayed by the Debtor's filing of a Chapter 11 petition on the morning of the foreclosure sale.

Westfield obtained a final judgment in foreclosure on April 26, 1993 in the amount of $1,915,257.20 with interest at 12% per annum. As of December 14, 1994, the interest due on the judgment was $375,924.93 for an aggregate amount due of $2,291,222.13. Interest continues to accrue at the per diem rate of $625.69. The Debtor failed to pay Orange County, Florida ad valorem real estate taxes assessed on the Southside Michigan Property since 1990 in the sum of $109,141.37. The Trustee succeeded the Debtor as the real party in interest of a counterclaim and appeal from final judgment arising in the state foreclosure action filed by Westfield in September 1991.

Firstate Financial, F.A. ("Firstate") is seeking to foreclose three properties located in Orange County and Polk County, Florida in which Firstate held a mortgage with the following values:

Alafaya (Orange County)     $1,540,000
No. Michigan Street (Orange County)     $1,100,000
Baseball City (Polk County)     $950,000

Since the loan was modified and extended in June 1990, the Debtor made no payment to Firstate on the loan nor paid any property taxes. Firstate seeks a principal balance of $1,830,319.33, advanced taxes of $269,850.15, interest of prime plus 2.5% to February 1, 1995 of $764,868.85, (the default rate of prime plus 7.5% from February 1, 1991 to February 1, 1995 of $1,167,686.28), attorney fees, and costs.

The Debtor filed a counterclaim against Firstate for fraud and breach of fiduciary duty and a third-party claim against her former attorneys for negligence and breach of contract based on events related to the closing of a modification of the mortgage loan. Those attorneys filed a third-party claim against Firstate's former attorneys and a claim against Firstate for fraud.

The RTC Mortgage Trust ("RTC"), successor in interest to Resolution Trust Corporation, as Receiver for Commonwealth Federal Savings and Loan Association, filed a foreclosure action against the Debtor arising from a loan consisting of a $1,500,000.00 promissory note and a $250,000.00 promissory note. The loan was secured by a first mortgage on the property referred to as Fairmont Plaza Shopping Center in Longwood, Florida. Pursuant to the terms of the loan, the notes matured and became due in full on March 23, 1990. On January 1, 1990, the loan went into default for failure to pay the regular monthly payment. No loan payments have been made since this date.

On August 29, 1990, the RTC filed a foreclosure action. The Debtor filed affirmative defenses and a counterclaim alleging the RTC tortiously interfered with the Debtor's business relationship with prospective purchasers and prospective tenants of Fairmont Plaza and for willfully and maliciously preventing the Debtor from selling or leasing space in Fairmont Plaza thus preventing the Debtor from satisfying amount owed the RTC.

The state court entered an Order on Sequestration of Rents which provided that the Debtor would manage Fairmont Plaza and be entitled to a fee of $2,500.00 per month. From January through August 1993, the total rental income collected by the Debtor was $30,413.50. During this period and pursuant to the state court Order, the Debtor paid herself $20,499.86 in management fees, 67% of the total rents collected. Pursuant to an agreement between the Debtor and RTC and this Court's Order of November 29, 1993, the Debtor received a management fee from rents collected at Fairmont Plaza in the sum of $1,000.00 per month and $2,500.00 per month from Amoco Oil Company. The Order Converting Case to Chapter 7 of February 28, 1994 rescinded all authorization to pay compensation to the Debtor.

On September 15, 1993, the date of the petition, the amount due the RTC was the sum of $1,769,263.28 consisting of $1,314,-339.98 in principal and $454,923.30 interest calculated at the contract rate.

The Debtor has attempted to sell each parcel of real estate since 1990 with no success. Significant amounts of interest and real estate taxes continue to accrue on the Debtor's obligations resulting in a continuing loss to and diminution of the estate. The Debtor's inability to sell any of the properties, make payments on her mortgages, and pay real estate taxes has resulted in unreasonable delay that is prejudicial to creditors.

On October 11, 1994, the Debtor filed a Motion to Convert to Chapter 11 alleging: the trustee's compromises do not bring in enough money to the estate; since conversion to Chapter 7, the Debtor has continued to enhance the value of property of the estate by continuing to lease property in the Fairmont Plaza; several creditors caused harm to the estate by pursuing state court actions in violation of the automatic stay during the Chapter 11 and after conversion to Chapter 7; Al Frith and John Stump filed claims as creditors although they were not owed any money by the Debtor; and the Debtor should

be allowed to propose a plan of reorganization.

The Motion to Convert to Chapter 11 is interwoven with three motions for and notices of proposed compromises of controversy (the "compromises") filed by the Trustee to resolve litigation involving secured creditors and other parties. The three compromises are in the best interest of the estate and have been approved.

## CONCLUSIONS OF LAW

On February 28, 1994, this Court entered an Order Converting Case to Chapter 7 pursuant to 11 U.S.C. § 1112. Section 706 of the Bankruptcy Code governs conversion and provides in pertinent part:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1307, or 1208 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
>
> (b) On request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time.

11 U.S.C. § 706. The legislative history of Section 706 reveals the debtor has one absolute right of conversion to a reorganization or individual repayment plan case. If the case has already once been converted from Chapter 11 or 13 to Chapter 7, the debtor does not have that right. H.REP. No. 95–595, 95th Cong., 1st Sess. 380 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6336; S.REP. No. 989, 95th Cong., 2d Sess. 94 (1978), U.S.Code Cong. & Admin.News 1978, p. 5880. This prevents debtors from seeking conversion back to Chapter 11, 12, or 13 without the control of the court after a case has been converted to Chapter 7. 4 COLLIER ON BANKRUPTCY ¶ 706.01 (15th ed. 1994). As this case has been converted from Chapter 11 to Chapter 7, the Debtor has no absolute right of conversion.

■■■ The Debtor's right to convert is not unlimited. The decisions to convert are within the discretionary process of the bankruptcy court based on the court's determination of what will most inure to the benefit of all parties in interest. *Matter of Texas Extrusion Corp.*, 844 F.2d 1142 (5th Cir.1988); *In re Graham*, 21 B.R. 235 (Bankr.N.D.Iowa 1982). When the Debtor invoked the jurisdiction of the Court by filing for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, she received the benefits and protection provided by the Bankruptcy Code. Litigation was stayed. The Debtor received additional time to effectuate a plan, sell, refinance the properties, or resolve the litigation with the lenders. While the Debtor is entitled to breathing room, the extent of the breathing room must be balanced against the legitimate rights of creditors.

The Court analyzed the issue pursuant to 11 U.S.C. § 1112 in converting the case to Chapter 7 on February 28, 1994 and in response to the motions to convert by various creditors. Section 1112 provides in pertinent part:

> (b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
>
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> (2) inability to effectuate a plan;
>
> (3) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (4) failure to propose a plan under section 1121 of this title within any time fixed by the court;
>
> (5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or modification of a plan;
>
> (6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

■■■■■■■■ **877**

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan; [or]

(9) termination of a plan by reason of the occurrence of a condition specified in the plan; or

(10) nonpayment of any fees or charges required under chapter 123 of title 28 [28 U.S.C.S. §§ 1911 *et seq.*]

11 U.S.C. § 1112.

In the more than five months of protection under Chapter 11, the Debtor was unable to meet her obligations to the secured lenders holding mortgages to the several parcels of real estate. The lenders have received no payments for more than four years. Real estate taxes remain unpaid since 1990. Although the Debtor remained in possession and control of the property which she has been marketing since 1990, she was unable to dispose of any property, obtain refinancing, or resolve the pending litigation with the lenders. During this time, the Debtor was unable to obtain anything for the benefit of creditors. Pursuant to 11 U.S.C. § 1112, this constituted a continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; demonstrated the Debtor's inability to effectuate a plan; and was an unreasonable delay by the Debtor that was prejudicial to creditors. The best interest of the creditors and the estate were served by conversion of this case to Chapter 7.

After conversion to Chapter 7, the Debtor continued to market the properties unsuccessfully. Although the Debtor's pending lawsuits may have some merit, the costs of litigation must be balanced by the best interest of the creditors. Although the Debtor argues it is in both her best interest and that of the estate to convert to Chapter 11, there has been no change in circumstances since the Court converted the case to Chapter 7 pursuant to 11 U.S.C. § 1112. Using her best efforts as a debtor in possession and subsequent to conversion, the Debtor has been unable to sell the properties, refinance, or otherwise resolve the pending litigation. Based on the Trustee's compromises, value will be realized for the estate. All creditors will be paid in full, the pending litigation will be resolved, and after payment of administrative expenses, it is anticipated the Debtor will receive in excess of $500,000.00.

The Debtor has received the benefits and protection provided by Chapter 11 and the opportunity to demonstrate if there is an ability to reorganize. Absent a change in circumstances, conversion to Chapter 11 would serve no valid purpose other than additional delay to creditors who have already suffered significant delay. Having been provided this opportunity and recognizing there has been no change since the Court converted the case, the creditors' rights must be protected. Weighing the Debtor's unsuccessful attempt at a Chapter 11 reorganization against the prejudice to the creditors and the costs to the estate, a liquidation of the Debtor's assets will inure to the benefit of all parties in interest.

Accordingly, the Debtor's Motion to Convert Case to Chapter 11 is due to be denied.